| | |
|---|---|
| DENNIS L. HALL and MICHELLE L. HALL,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | No. 1:16-cv-00684-DAD-JLT<br><br>FINAL PRETRIAL ORDER |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

On November 29, 2017, the court issued a tentative pretrial order. That order gave the parties fourteen days to file objections, and seven days thereafter to file any replies. Defendant filed objections on December 13, 2017. (Doc. No. 42.) No objections were received from plaintiffs, and plaintiffs filed no reply to defendant's objections. The court now issues this final pretrial order.

On March 30, 2016, plaintiffs Dennis Hall and Michelle Hall filed this action against defendant FCA US, LLC in the Kern County Superior Court, alleging state law causes of action for breach of express and implied warranties under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794 *et seq.* (hereinafter referred to as the "Song-Beverly Act"), and fraudulent inducement. (*See* Doc. No. 1-1.)

/////

1

# I. JURISDICTION/VENUE

Neither party disputes that jurisdiction and venue are proper in this court. Plaintiffs are citizens of the state of California, and the defendant entity is a citizen of the Netherlands, thus demonstrating complete diversity between the parties. The amount in controversy in this action exceeds $75,000. The court has jurisdiction over this matter.

# II. JURY TRIAL

Plaintiffs request a jury trial. Plaintiffs suggested in the pretrial statement that they anticipated a jury trial lasting ten to twelve days, while defendant estimates a jury trial would take five days. At the pretrial conference, plaintiffs' counsel agreed these cases typically require five to seven days of trial. Therefore, the court anticipates this trial will consume approximately five court days.

# III. DISPUTED FACTUAL ISSUES

1. FCA US LLC is a manufacturer of Dodge vehicles, including the 2012 Dodge Durango.

2. Plaintiffs purchased a new 2012 Dodge Durango ("subject vehicle") on August 29, 2011, from Haddad Dodge ("Haddad Dodge").

3. The subject vehicle was covered by express written warranties issued by FCA US LLC, including the "Basic Limited Warranty" and the "Powertrain Limited Warranty."

4. The "Basic Limited Warranty" covered all components of the subject vehicle against defects in materials or workmanship for a period of three years or 36,000 miles, whichever came first, calculated from the date of delivery of the subject vehicle to plaintiffs.

5. The "Powertrain Limited Warranty" covered specified engine, transmission, and drivetrain components of the subject vehicle for a period of five years or 100,000 miles, whichever came first, calculated from the date of delivery of the subject vehicle to plaintiffs.

6. Plaintiffs timely submitted a request for exclusion from the proposed settlement of a class action lawsuit which concerned alleged defects in the TIPM-7 control module, *Velasco, et al. v. Chrysler Group, LLC*, Case No. 2:23-cv-08080.

7. Haddad Dodge is defendant's authorized repair facility.

## IV. DISPUTED FACTUAL ISSUES

1. Whether any of the subject vehicle's problems that plaintiffs presented to Haddad Dodge for diagnosis and repair are "nonconformities."

2. Whether FCA US LLC or its authorized repair facilities were given a "reasonable number of opportunities" to repair the subject vehicle to match its express warranties.

3. Whether FCA US LLC or its authorized repair facilities failed to repair the subject vehicle to match the express warranties after a reasonable number of opportunities.

4. Whether, if FCA US failed to repair the subject vehicle after a reasonable number of opportunities, FCA US LLC failed to promptly replace or repurchase the subject vehicle.

5. Whether plaintiffs placed FCA US LLC on notice of a potential claim for the repurchase or replacement of the subject vehicle.

6. Whether any failure to repurchase or replace the subject vehicle was willful.

7. Whether FCA US LLC maintains an informal dispute resolution program meeting the requirements for a "qualified alternative dispute resolution program" including:

    (a) Whether the program complies with the minimum requirements of the Federal Trade Commission for informal dispute settlement procedures as set forth in Part 703 of Title 16 of the Code of Federal Regulations, as those regulations read on January 1, 1987.

    (b) Whether the program takes into account, in rendering decisions, all legal and equitable factors, including, but not limited to, the written warranty, the rights and remedies conferred in regulations of the Federal Trade Commission contained in Part 703 of Title 16 of the Code of Federal Regulations as those regulations read on January 1, 1987, Division 2 (commencing with Section 2101) of the Commercial Code, this chapter, and any other equitable considerations appropriate in the circumstances.

    (c) Whether the program maintains certification by the Department of Consumer Affairs pursuant to Chapter 9 (commencing with Section 472) of Division 1 of the Business and Professions Code.

8. Whether the Durango was sold with a defective Totally Integrated Power Module 7 ("TIPM-7").

9. Whether FCA US LLC was aware that the TIPM-7 in plaintiffs' subject vehicle was defective before the sale of the vehicle.

10. Whether National Highway Traffic Safety Administration ("NHTSA") investigations and recalls, FCA US LLC's Technical Service Bulletins ("TSBs"), and/or FCA US LLC's voluntary recall notices demonstrate that FCA US LLC had superior and exclusive knowledge of the defects in the TIPM-7 found in the subject vehicle.

11. Whether pre-release testing performed on vehicles equipped with the TIPM-7, demonstrate FCA US LLC's longstanding knowledge of TIPM-7 defects.

12. Whether FCA US LLC disclosed information concerning TIPM-7 defects to plaintiffs before they purchased the subject vehicle.

13. Whether FCA US LLC instructed its authorized repair facilities to disclose the TIPM defect to consumers or to plaintiffs.

14. Whether plaintiffs did not know of the TIPM defects when they purchased the subject vehicle or brought it to authorized repair facilities for diagnosis or repair.

15. Whether plaintiffs reasonably relied on FCA US LLC's representations or omissions about defects in vehicles with the TIPM-7, like the subject vehicle.

16. Whether FCA US LLC concealed from plaintiffs a known defect or defects related to the TIPM-7.

17. Whether plaintiffs incurred any harm or damages as a result of any alleged concealment of defects related to the TIPM-7.

18. Plaintiffs' total damages, which may include: the "total amount paid and payable" for the subject vehicle; the extent and value of any mileage offset applicable to a restitution remedy under the Song-Beverly Act, calculated as follows: "The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number

of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity."

19. The total amount of incidental damages suffered by plaintiffs, including "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods" as defined in Commercial Code § 2715.

20. The total amount of consequential damages suffered by plaintiffs, "including, but not limited to, reasonable repair, towing, and rental car costs actually incurred," California Civil Code § 1793.2(d)(2)(A), and "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and [i]njury to person or property proximately resulting from any breach of warranty," California Commercial Code § 2715(2).

21. Whether plaintiffs were harmed by concealment or misrepresentation about TIPM-7 defects.

22. Whether concealment of TIPM-7 defects was a substantial factor in causing plaintiffs' harm.

23. FCA US LLC's net worth, under California precedent for calculation of punitive damages.

24. Plaintiffs' total damages.[1]

V. DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have filed motions *in limine*. (Doc. Nos. 45–48.) Opposition to these motions *in limine* shall be filed no later than 14 days before trial and any replies shall be filed no later than 10 days before trial. Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any *motions in limine* prior to the first day of trial.

/////

---

[1] Defendant indicated it had "attached its calculation of plaintiffs' damages pursuant to the Song-Beverly Consumer Warranty Act to this pretrial statement as Exhibit 2." (Doc. No. 35 at 7.) However, no Exhibit 2 was included in defendant's submissions.

VI. SPECIAL FACTUAL INFORMATION

None.

VII. RELIEF SOUGHT

1. Plaintiffs seek restitution or damages for the diminished value of the vehicle, plus incidental and consequential damages. Additionally, plaintiffs seek a civil penalty of up to two times the actual damages for defendant's alleged willful failure to comply with the Song-Beverly Act. Plaintiffs seek damages, including punitive damages, for defendant's fraudulent concealment of a known defect.

VIII. POINTS OF LAW

The claims and defenses alleged here arise under California law. All of plaintiffs' claims are brought against the defendant, FCA US, LLC.

1. The elements of, standards for, and burden of proof for an action alleging breach of express warranty under the Song-Beverly Act, California Civil Code § 1794 *et seq*.
2. The elements of, standards for, and burden of proof for an action alleging breach of implied warranty under the Song-Beverly Act, California Civil Code § 1794 *et seq*.
3. The elements of, standards for, and burden of proof in an action alleging fraudulent inducement – concealment under California law.
4. Whether the Song-Beverly Act places the burden on the warrantor to monitor its warranty repair attempts and to offer remedies when it fails to conform a vehicle to its warranty.
5. The elements of, standards for, and burden of proof for determining what damages, including punitive damages, are appropriate, if plaintiff prevails.
6. The elements of, standards for, and burden of proof for the affirmative defense of failing to mitigate damages.
7. The elements of, standards for, and burden of proof for the affirmative defense that defendant appropriately repaired plaintiffs' vehicle.
8. The elements of, standards for, and burden of proof for the affirmative defense that defendant fully complied with Civil Code § 1793(d)(2) by offering to repurchase plaintiffs' vehicle.

9. The elements of, standards for, and burden of proof for the affirmative defense that it was impossible for defendant to render performance under Civil Code § 1793(d)(2) because plaintiffs' did not accept defendant's offer to repurchase the vehicle.
10. The elements of, standards for, and burden of proof for the affirmative defense that plaintiffs failed to serve written notice as required by Civil Code § 1794(e)(3).
11. The elements of, standards for, and burden of proof for the affirmative defense that defendant believed that replacement or repurchase of the vehicle was not appropriate.[2]

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

IX. ABANDONED ISSUES

There are none abandoned claims or issues by plaintiffs. Defendant withdraws its first, second, third, fourth, fifth, seventh, eighth, tenth, twelfth, thirteenth, sixteenth, seventeenth, eighteenth, and nineteenth affirmative defenses. (*See* Doc. No. 1-1 at 40–46.)

X. WITNESSES

The anticipated witnesses for both parties are listed below. Each party may call any witnesses designated by the other.

    A.    Witness list

        (1)    Dennis L. Hall

        (2)    Michelle L. Hall

        (3)    Michael McDowell, FCA's Person Most Knowledgeable, Irvine, California

        (4)    Robert Carrillo, Haddad Dodge's Jeep Person Most Qualified, Haddad Dodge, 3000 Harris Rd., Bakersfield, California 93313

---

[2] In its objections to the Tentative Pretrial Order, defendant states that it has not abandoned other affirmative defenses which should be included in the final pretrial order. The court disagrees. Much of what defendant has listed in this regard are not affirmative defenses but merely statements that plaintiff will be unsuccessful in proving their claims at trial.

(5) Service Advisor Gregette Clark (624), Haddad Dodge, 3000 Harris Rd., Bakersfield, California 93313

(6) Service Advisor Tony Bounvilla (37690), Haddad Dodge, 3000 Harris Rd., Bakersfield, California 93313

(7) Service Advisor Andrea Tilley (79545), Haddad Dodge, 3000 Harris Rd., Bakersfield, California 93313

(8) Technician Salvador Alcala Jr. (7435), Haddad Dodge, 3000 Harris Rd., Bakersfield, California 93313

(9) Darrell Blasjo, plaintiffs' expert

(10) Dr. Barbara Luna, plaintiffs' expert

(11) Michael McDowell, defendant's personal most knowledgeable

(12) Richard Schmidt, defendant's automotive expert, Irvine, California

(13) James Bielenda, defendant's automotive engineer, Auburn Hills, Michigan

(14) Richard Thornton, Third Party Arbitration Program Certification, Auburn Hills, Michigan

B. **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

C. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

(1) The witness could not reasonably have been discovered prior to the discovery cutoff;

|   |   |   |
|---|---|---|
| | (2) | The court and opposing parties were promptly notified upon discovery of the witness; |
| | (3) | If time permitted, the party proffered the witness for deposition; and |
| | (4) | If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties. |

XI. EXHIBITS, SCHEDULES, AND SUMMARIES

The parties' joint exhibits are listed in Exhibit 1. (Doc. No. 35-1.)

No exhibit shall be marked with or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2. Plaintiffs' exhibits shall be listed numerically and defendants' exhibits shall be listed alphabetically. All exhibits must be pre-marked. The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine. The parties must exchange exhibits no later than **28 days before trial**. Any objections to exhibits are due no later than **14 days before trial**. The final exhibits are due **by January 4, 2018.** In making any objection, the party is to set forth the grounds for the objection. As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation.

**The court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria**

A. The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

(1) The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

(2) The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

9

  B. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

    (1) The exhibits could not reasonably have been discovered earlier;

    (2) The court and the opposing parties were promptly informed of their existence; and

    (3) The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

## XII. DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**. The parties may use the below discovery documents at trial:

  A. Defendant's Responses to Plaintiffs' Requests for Production of Documents
  B. Defendant's Responses to Plaintiffs' Interrogatories
  C. Defendant's Responses to Plaintiff's Requests for Admission
  D. Plaintiff's Responses to Defendants' Requests for Production of Documents
  E. Plaintiffs' Responses to Defendant's Interrogatories
  F. Plaintiffs' Responses to Defendant's Requests for Admission

## XIII. FURTHER DISCOVERY OR MOTIONS

Both parties anticipate filing motions in limine, as discussed above. No other motions are anticipated at this time.

## XIV. STIPULATIONS

None.

## XV. AMENDMENTS/DISMISSALS

None.

## XVI. SETTLEMENT

The parties have had settlement discussions, but have been unable to reach a resolution. The parties attended a mandatory, court supervised settlement conference on March 22, 2017, at which time the case did not settle. (*See* Doc. No. 27.) The parties plan to continue negotiating, and advised the court at the Final Pretrial Conference that a further court-supervised settlement conference would not be helpful at this time. If the parties' position in that regard should change prior to trial, counsel shall so notify the court.

## XVII. JOINT STATEMENT OF THE CASE

The parties have agreed to read the following joint statement of the case to the jury pool prior to jury selection:

> Plaintiffs Dennis and Michelle Hall bought a 2012 Dodge Durango manufactured by FCA US. The Durango was sold with FCA US's basic limited warranty and a 5-year or 100,000-mile warranty on the vehicle's powertrain.
>
> Plaintiffs contend the Durango contained defects covered by the warranty that substantially impaired the vehicle's use, value and safety which FCA US and its authorized repair facilities were unable to repair after a reasonable number of opportunities to do so; and that FCA US failed to promptly replace or buy back the Durango. Plaintiffs seek a repurchase of the Durango along with civil penalties based on FCA US's alleged willful failure to repurchase or replace the Durango. Additionally, Plaintiffs claim FCA US concealed a known defect in the Durango and, through this concealment, fraudulently induced Plaintiffs to purchase the Durango.
>
> FCA US contends that it fully complied with the warranties and repaired any mechanical issue covered by a warranty that was presented to its dealership within a reasonable number of repair attempts. FCA US further contends that it did not willfully violate the Song-Beverly Act and no civil penalty is warranted. FCA US contends that it did not conceal any known defect in the Durango from the Plaintiffs.

## XVIII. SEPARATE TRIAL OF ISSUES

The parties do not seek a separate trial of any issues.

## XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

The parties have each designated their own experts and do not seek court appointed impartial expert witnesses. Further, the parties do not believe that a limitation of the number of

expert witnesses is advisable.  Defendant objects to plaintiff's expert witnesses as indicated above.

XX. ATTORNEYS' FEES

Plaintiffs will move for an award of reasonable attorneys' fees and costs under California Civil Code § 1794(d) if they are the prevailing party at trial or by settlement.

XXI. TRIAL EXHIBITS

Special handling of trial exhibits is not anticipated.

XXII. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

The parties do not seek a protective order.

XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for January 9, 2018 at 8:30 a.m. in Courtroom 5 before the Honorable Dale A. Drozd.  Trial is anticipated to last approximately five court days.  The parties are directed to Judge Drozd's standard procedures available on his webpage on the court's website.

Counsel are to call Renée Gaumnitz, Judge Drozd's courtroom deputy, at (559) 499-5652, one week prior to trial to ascertain the status of the trial date.

XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be limited to fifteen minutes of jury *voir dire*.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

Objections to proposed jury instructions must be filed **7 days before trial**; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for

the objection along with citation of authority.  When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV.  TRIAL BRIEFS

As noted above, trial briefs are due **7 days before trial**.

IT IS SO ORDERED.

Dated: __**December 22, 2017**__  _____
UNITED STATES DISTRICT JUDGE