**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS L. HALL and MICHELLE L. HALL, | Case No.: 1:16-cv-0684 - JLT |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS |
| v. | |
| FCA US LLC, | (Doc. 69) |
| Defendant. | |

In this action, Plaintiffs asserts that Defendant is liable for violations of the Song-Beverly act and fraudulent inducement under California law. The parties settled the underlying claims. Plaintiffs now seek an award of attorney fees and costs. (Doc. 69) For the reasons set forth below, Plaintiffs' motion is **GRANTED** in part, in the modified amount of $36,099.75.

**I.     Background**

Plaintiffs purchased a 2011 Dodge Durango on January 6, 2012. (Doc. 1-1 at 7, ¶7) According to Plaintiffs, the vehicle "was delivered to [them] with serious defects and nonconformities to warranty[,] and developed other serious defects and nonconformities to warrant including, but not limited to a defective [Totally Integrated Power Module]." (*Id.* at 27, ¶ 130)

Plaintiffs report their vehicle "was factory-equipped" by Defendant with the Totally Integrated Power Module ("TIPM"), which "is the chief component in the … power distribution systems and consists of a computer, relays, fuses, and controls." (Doc. 1-1 at 7, ¶ 9) According to Plaintiffs, "The

TIPM provides the primary means of voltage distribution and protection for the entire vehicle..." (*Id.*) Electrical systems receiving power from the TIPM included the vehicle's "safety systems, security system, ignition system, fuel system, electrical powertrain, and … comfort and convenience systems." (*Id.*, ¶ 10)

Plaintiffs contends the TIPM installed in their vehicle was faulty and "thus fails to reliably control and distribute power to various vehicle electrical systems and component parts," which caused trouble starting, oil leaks, and "various electrical issues." (Doc. 1-1 at 7, ¶¶ 11-12) In addition, Plaintiffs allege the TIPM "is likely to cause a variety of electrical issues such as loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may increase the risk of injury for the driver, passengers, or others on the roadway." (*Id.*, ¶ 13)

According to Plaintiffs, Defendant "had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discovered by Plaintiffs before [they] purchased or leased the Subject Vehicle." (Doc. 1-1 at 8, ¶ 15) Plaintiffs report: "FCA US LLC vehicles have been plagued with severe TIPM problems for the last decade. As a result, FCA US LLC has initiated multiple TIPM related recalls to address safety or emissions concerns." (*Id.*, ¶ 17) Further, Plaintiffs assert the TIPM "defect is so widespread that… replacement parts have often been on national backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months of have their TIPMs replaced." (*Id.*, ¶ 19) They allege dealers and auto-technicians "advis[ed] many drivers to not drive their vehicles until the TIPM [was] replaced, due to safety risks." (*Id.*) However, Defendant did not disclose the defect "to Plaintiffs prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle." (*Id.* at 19, ¶ 87)

In October 2015, "Plaintiff[s] received a letter in the mail from the settlement administrator in a class action lawsuit" informing Plaintiffs that they were "member[s] of a class of individuals for which a 'class action settlement involving the Totally Integrated Power Module (TIPM)' had been reached." (Doc. 1-1 at 22, ¶ 106) The letter informed them that the plaintiff in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK (C.D. Cal) claimed the TIPM "installed in model-years 2011, 2012, and 2013 Dodge Durango and Jeep Grand Cherokee vehicles is defective and

poses a safety hazards." (*Id.*) Plaintiffs contend this was "the earliest date that FCA US LLC made any attempt to notify [them] of any of the known defects in the TIPM7." (*Id.*) Plaintiffs "opted out of the class action settlement in *Velasco* and filed the instant action to pursue [their] individual rights." (*Id.* at 26, ¶ 125)

On March 30, 2016, Plaintiffs filed her complaint in Kern County Superior Court, Case No. BCV-16-100702-DRL. (*See* Doc. 1-1 at 5) Plaintiffs identified the following causes of action in their complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement. (*Id.* at 5, 27-32) Plaintiffs' prayer for relief included, but was not limited to: general, special and actual damages; recession of the purchase contract and restitution of all monies expended; diminution in value; civil penalties totaling two times her actual damages, and reasonable attorney fees and costs. (*See id.* at 32) Defendant filed its answer in May 2016, asserting in part that "Plaintiffs' entire Complaint [was] moot based upon the fact that FCA US LLC … offered to repurchase Plaintiffs' vehicle" as a repurchase under the Song-Beverly Act. (Doc. 1-1 at ¶¶ 1, 27)

On May 13, 2016, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court. (Doc. 1) Plaintiffs filed a motion to remand the action to the state court on June 10, 2016. (Doc. 6) The Court determined it had diversity jurisdiction over the action and denied the motion to remand on August 24, 2016. (Doc. 15) Following this determination, the Court held a Scheduling Conference with the parties, and the matter was set for trial in January 2018, which was later continued to April 2018. (Docs. 19, 62)

On January 31, 2018, the parties notified the Court that they settled the action. (Doc. 65) However, the settlement agreement did not include Plaintiffs' attorney fees, costs and expenses. (*See id.* at 2) The Court ordered Plaintiffs to file any motion for attorneys' fees no later than April 13, 2018. (Doc. 68)

Plaintiffs timely filed their motion for fees and costs, which is now pending before the Court. (Doc. 69) Defendant filed its opposition to the motion on April 30, 2018 (Doc. 70), to which Plaintiffs filed a reply on May 7, 2018. (Doc. 71) Because the matter was suitable for decision without oral arguments, the matter was taken under submission pursuant to Local Rule 230(g) on May 9, 2018.

## II. Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

4

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

## III. Evidentiary Objections

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 70-2; Doc. 71-2) The Court has read and considered each objection made by Defendant and Plaintiffs, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

## IV. Discussion and Analysis

As prevailing buyers, Plaintiffs are entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal.App.5th at 470. Here, Plaintiffs seek: (1) an award of attorneys' fees pursuant to the Song-Beverly Act in the amount of $54,740.00; (2) a lodestar multiplier of 1.5, in the amount of $27,370.00; and (3) actual costs and expenses of $8,852.67. (Doc. 80-1 at 6) Thus, Plaintiffs seek a total award of $90,962.67. (*Id.*) Defendant acknowledges, "Plaintiffs are entitled to recover attorney's fees, costs, and expenses" but argues the amount requested is unreasonable. (*See* Doc. 70 at 6)

### A. Fee Request

Plaintiffs seek $30,985.00 for the work completed by Knight Law Group and $23,755.00 for work completed by Hackler Daghighian Martino & Novak, P.C., which Knight Law Group brought in "to serve as lead trial counsel and prepare the case for trial." (Doc. 69-1 at 11)

#### 1. Hours worked by counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum*

*v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation").

                    *a.*     *Work completed by Knight Law Group*

The billing records submitted by Knight Law Group indicate the attorneys expended 86.9 billable hours on this action, through the preparation of the motion for fees and costs. (*See* Doc. 69-2 at 32) Defendant objects to the hours reported by Plaintiff's counsel and contends there was "improper staffing of routine tasks and duplication of activity that should be subtracted from any fee award." (Doc. 70 at 12, emphasis omitted) According to Defendant, "The invoice attached to the declaration of Steve Mikhov… contains multiple instances of him reviewing pleadings and discovery already drafted and reviewed by other lawyers, discovery responses received from Defendant, expert designations, and notices of depositions." (*Id.*) Further, Defendant argues no fees should be awarded to Knight Law Group for work "after the Daghighian firm took over the case." (*Id.*)

Significantly, Defendant does not identify any specific billing entries where Mr. Mikhov duplicated the work of junior attorneys, or merely reviewed the work that was billed by others. The Court's review of the billing records for Knight Law Group did not reveal duplicate tasks between the junior and senior counsel that must be omitted from the lodestar. Although Defendant objects to the fact that Mr. Mikhov billed for "communicating with the client and conferring with trial counsel" because "it is expected that junior attorneys will perform more basis tasks," Defendant identifies no legal authority supporting its assertion that fees should not be awarded for tasks that *could* be completed by a junior attorney but were, instead, completed by senior counsel.

In addition, though Hackler Daghighian Martino & Novak, P.C. was associated in as the trial counsel, Defendant does not identify any duplicate tasks between the two firms. Indeed, the Ninth Circuit "recognized that 'the participation of more than one attorney does not necessarily constitute an

unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). Accordingly, the Court declines to reduce the hours billed by Knight Law Group on these grounds.

> b. *Work completed by Hackler Daghighian Martino & Novak, P.C.*

As noted above, Knight Law Group associated Hackler Daghighian Martino & Novak, P.C. ("HDMN") into the case to serve as lead trial counsel. (Doc. 69-1 at 11) Defendant objects to the hours billed by HDMN as unreasonable, noting that the "firm billed a total of $23,755 in quarter hour increments." (Doc. 70 at 12) According to Defendant, "Billing in quarter hour increments is an added layer of overreaching that takes the Plaintiffs fee request out of the bounds of reasonableness under any evaluation." (*Id.*)

> i. *Clerical tasks*

Review of the time sheets from HDMN reveals tasks that were purely clerical and should be excluded from the lodestar calculation. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Specifically, Kevin Yaghoubzadeh, a paralegal, recorded 1.50 hours for tasks including printing and saving documents, preparing case files, reviewing the Court's scheduling order, and calendaring deadlines. (*See* Doc. 69-3 at 8)

Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"). Accordingly, the time expended by Mr. Yaghoubzadeh on the clerical tasks will be deducted from the lodestar.

> ii. *Unsupported and anticipated time*

The Court declines to award the 11.5 hours of time that counsel anticipated would be spent in reviewing the opposition to the motion, drafting the reply brief, or preparing and attending the hearing on the motion for fees. (*See* 69-3 at 12) No evidence of the time actually spent on these efforts was documented to the Court, and the motion was taken under submission without oral arguments. The

Court declines to speculate as to the actual time spent by counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below will reflect a reduction of 11.5 hours for the work Sepehr Daghighian would be completed.

### iii. Quarter-hour billing

As Defendant observes, the minimum time recorded by attorneys at HDMN was 0.25 hours, which is a practice that has been criticized because it inflates time spent on the matter. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments); *Ekstrom v. Marquesa at Monarch Beach Homeowners Assoc.*, 2008 WL 4768861 (Cal. App. 4th. Nov. 3, 2008) (finding the trial court did not err in decreasing the fees requested by 40% where the attorneys billed in quarter-hour increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets, and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the d reduction for quarter-hour billing. *Id.*

Counsel billed 15 minutes on several occasions for tasks such as sending and reviewing emails. (Doc. 69-3 at 8-11) For example, Larry Casruita indicated that he spent 0.25 hours to email Sepehr Daghighian regarding consenting to magistrate judge jurisdiction, 0.75 hours to "Research and Draft a Consent to Proceed with magistrate Judge," and 0.25 hours to contact the Court regarding the consent. (*Id.* at 11) However, this appears excessive in light of the fact that "drafting" a document was not required, as the consent form filed by Sepehr Daghighian (Doc. 50) was the single page, check-the-

box form supplied by this Court and could not possibly take more than minutes to discuss and prepare. *See Calderon v. Astrue*, 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only 0.1 hour for its completion). Similarly, the 1.0 hour billed by Sepehr Daghighian to draft a notice of potential unavailability—which was less than half a page of writing— strongly suggests the reported time was inflated by the quarter-hour billing minimum.

Consequently, the remaining time reported by the attorneys HDMN is reduced by 20% for purposes of the lodestar calculation, for a total of 16.2 hours worked by Sepher Daghighian, 23.6 hours by Larry Casruita, and 0.8 hours by Lauren Martin. The Court finds this time reasonable for the tasks undertaken by each of the attorneys.

### 2. Hourly rates

The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 84359, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either

because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiffs present no evidence that local counsel was either unwilling or unable to prosecute her claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6.

The attorneys at Knight Law Group seek hourly rates ranging from $325 to $500, while attorneys at HDMN seek hourly rates of $225 and $400. (Doc. 69-2 at 32; Doc. 69-3 at 8) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiffs request the Court review:

> (i) the hourly rates set forth in the [accompanying] declarations… (SM Dec., ¶¶ 31-34); (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶36(a)-(g)), (iii) over two dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 38-82, Exs. D-VV, and (iv) a National Survey further supporting the reasonableness of the hourly rates (SD Dec., ¶ 8, Ex. B, at pp. 42-45).

(Doc. 69-1 at 17) However, this evidence does not address the local forum or assist the Court in its analysis. For example, while Mr. Mikhov reports "the hourly rates of other attorneys in the [state of] California who work in the area of lemon law and consumer law," he does not identify attorneys practicing in the Eastern District. (*See* Doc. 69-2 at 9, ¶ 36)

Further, though Mr. Mikhov identifies cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Kern County and Tulare County—the courts' orders offer no analysis regarding whether the hourly rates were reasonable for local counsel. (*See, e.g.* Doc. 69-2 at 82, 143) Without such analysis, the Court is unable to determine whether the plaintiffs presented evidence that local counsel was either unwilling to take their cases or unable to do so, such that the higher hourly rate was warranted. Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar. *See, Gordillo*, 2014 U.S. Dist. LEXIS 84359 at *14-15; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community).

10

Previously, this Court reviewed the billing rates for the Fresno Division and determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester,* 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co*., 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The hourly rate for Mr. Mikhov, who was admitted to the bar in 2003 and practiced law for nearly fifteen years, will be reduced to $300. *See Trujillo v. Singh,* 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area); *Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years"). The hourly rate for Sepehr Daghighian, who began practicing law in late 2005, will be adjusted to $275. The hourly rate for Kristina Stephenson-Cheang, who began practicing law in 2008, will be adjusted to $250. Further, the rates for Alastair Hamblin, Amy Morse, and Larry Casruita—who began practicing law between 2011 and 2013—will be adjusted to $225. Finally, the hourly rate for Lauren Martin, who has less been in practice for less than one year, is adjusted to $175.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable. *See Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3. Lodestar calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545

n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). With the time and rate adjustments set forth above, the lodestar in this action is **$30,467.50**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($20,562.50)** | Steve Mikhov | 12.2 | $300 | $3,660.00 |
| | Kristina Stephenson-Cheang | 3.8 | $250 | $950.00 |
| | Alastair Hamblin | 50.4 | $225 | $11,340.00 |
| | Amy Morse | 20.5 | $225 | $4,612.50 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($9,905.00)** | Sepehr Daghighian | 16.2 | $275 | $4,455.00 |
| | Larry Casruita | 23.6 | $225 | $5,310.00 |
| | Lauren Martin | 0.8 | $175 | $140.00 |
| | Kevin Yaghoubzadeh | 0.0 | N/A | |
| | | | | |
| **TOTAL** | | | | **$30,467.50** |

### 4. Application of a multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").

Significantly, however, this case did not present novel or difficult questions of law or fact. Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK. Thus, the issues presented in this action were not complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). Further, as Defendant observes, the facts were not significantly disputed and little discovery was required. It does not appear that significant skill was needed to pursue Plaintiffs' claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiffs' counsel—nine attorneys in total—expended less than 150 hours of work on this action over the course

of two years. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. Accordingly, the Court finds the lodestar amount of $**30,467.50** is reasonable and declines to award a multiplier.

### B. Costs to be Awarded

Plaintiffs request costs in the amount of $8,852.67. (Doc. 69-1 at 24; Doc. 69-4 at 1) In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and

salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller § 2666, at 203).

### 1. Personal service

Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal." Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a). *See Yeager v. Bowlin,* 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiffs seek costs for service of the complaint in the amount of $37.95 and personal service of several deposition subpoenas in the amount of $35.00 each. (Doc. 69-4 at 3, 6-15) These fees are within the amount authorized under Section 0.114(a) and will be allowed. However, Plaintiffs also seek $140.00 for personal service of the subpoena to Haddad Dodge's PMQ, who was served at the same address as other individuals, on the same date. (*Compare* Doc. 69-4 at 7 *with* Doc. 69-4 at 16) Plaintiffs offer no explanation as to why the cost for service of this subpoena was significantly greater. In addition, there is no evidence regarding the amount of time required for service of the subpoena to be effected. Accordingly, the Court reduces the service fee by $75.00 to the $65.00 contemplated by statute.

### 2. Overnight courier and messenger services

Plaintiffs seek costs for service of documents, including documents sent to the Court, including $132.85 for an overnight courier and $143.16 for messenger services. (Doc. 69-4 at 4) However, "[c]ommunication charges like courier [and] mail… costs cannot be taxed" under Section 1920. *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014)

(citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc.,* 2015 WL 3548572 at *3(N.D. Cal. June 5, 2015) ("Overnight delivery and courier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv.*, 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007) (finding "overnight delivery and messenger services" "fall outside of the[] parameters" of Section 1920). Accordingly, Plaintiffs' requests for these costs are denied, and the cost award will be reduced by $276.01.

### 3. CourtCall

Plaintiffs seek $30.00 for the appearance of Mr. Hamblin at the Initial Scheduling Conference via CourtCall. (Doc. 69-4 at 4) Previously, this Court determined the costs of CourtCall "are outside the scope of § 1920." *Graff v. City of Tehachapi*, 2016 WL 4944005 at *5 (E.D. Cal. Sept. 16, 2016); Because telephonic appearances are not authorized by Section 1920, the Court reduces the cost award by $30.00.

### 4. Mileage

The itemization of costs provided by Plaintiffs indicates that they seek costs for their attorneys' mileage to and from several depositions. (Doc. 69-4 at 3) In total, Plaintiffs seek $228.94 in mileage for Alastair Hamblin and $94.93 in mileage for Larry Casruita. (*Id.*)

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920. *See, e.g.*, *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.,* 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920"). As a result, Plaintiffs are not entitled to mileage for their attorneys to travel to the depositions. *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.,* 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the … mileage fee for their attorney's travel"). Therefore, Plaintiffs' request for costs will be reduced by $323.87.

### 5. Deposition transcripts

Section 1920(2) provides that "fees for printed or electronically recorded transcripts necessarily

15

obtained for use in the case" may be taxed as costs. Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and Section 1920. *See Aflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to deposition transcripts that are "merely for the convenience of counsel" are not permitted under Section 1920. *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1757217 at *7 (E.D. Cal. Apr. 30, 2014). As a result, costs for expediting transcripts, condensing the transcripts, and litigation support packages are not permitted. *See Daniel v. Ford Motor Co.,* 2018 WL 1960653 at *4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, … 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys"); *see also Hesterberg v. United States,* 75 F.Supp.3d 1220, 1225 (N.D. Cal. 2014) (noting it was "well established" in the Northern District that "expedited delivery charges for deposition transcripts are not allowable") (internal quotation marks omitted).

Plaintiffs have not made any showing that the costs of expediting transcripts, overnight delivery, CD of the exhibits, and litigation support packages were necessary for the case. Rather, they appear to have been for the convenience of counsel, and recovery is not permitted under Section 1982. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel,* 2018 WL 1960653 at *4. Accordingly, the Court will deduct the following from the costs requested by Plaintiffs: $423.04 for expediting and overnight delivery of the transcript of Richard Schmidt, $25.00 for a CD of exhibits, $15.00 for condensing a transcript, and $80.00 for litigation support packages. (*See* Doc. 69-4 at 17-18, 21). This results in a total deduction of $543.04 related to the deposition transcripts.

### 6. Experts

Plaintiffs seek $2,012.50 in expert witness fees, including $1,200.00 for the report of Darrell Blasjo and deposition of Richard Schmidt. (Doc. 69-4 at 3-4) Plaintiffs assert such costs are appropriate under state law, noting: "Under the Song-Beverly Act, a prevailing plaintiff is entitled to recover all of its costs <u>and expenses</u>." (Doc. 69-1 at 24, emphasis in original)

Significantly, the Ninth Circuit determined a court must apply federal law to a request for costs in a diversity action. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995). The Court in *Aceves* awarded the prevailing party costs, including expert witness fees, under section 998(c) of the California Code of Civil Procedure. *Id.*, 68 F.3d at 1167. The Ninth Circuit determined the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation." *Id.*, citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965). Accordingly, here, the Court must apply federal law to determine whether Plaintiffs are entitled to recover expert fees as costs.

Under Section 1920, only compensation for "court appointed experts" and witness fees are permitted. *See* 28 U.S.C. § 1920. Neither of Plaintiffs' witnesses were appointed by the Court. As such, Plaintiffs are not entitled to recover the expert fees under Section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition. Thus, a prevailing party may be awarded the witness fee under Section 1821 for an expert who testifies at a deposition. *See Ruff v. County of Kings*, 700 F.Supp.2d 1245, 1247-48 (E.D. Cal. 2010). Consequently, Plaintiffs are entitled to $40 in costs for his deposition.

### 7. Total costs to be awarded

With the deductions set forth above, Plaintiffs are entitled to $5,632.25 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.

## V. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiffs' motion for fees is **GRANTED** in the modified amount of $**30,467.50**; and
2. Plaintiffs' motion for costs is **GRANTED** in the amount of $**5,632.25**.

IT IS SO ORDERED.

Dated: **May 21, 2018**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE